# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | Case No. 16-11501 (CSS) |
| MAXUS ENERGY CORPORATION, ) | |
| et al., ) | Jointly Administered |
| ) | |
| Debtors. ) | |
| _____ ) | |
| JOSEPH J. FARNAN, JR, in his capacity ) | |
| LIQUIDATING TRUSTEE OF THE ) | |
| MAXUS LIQUIDATING TRUST, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Adv. Pro. No.: 18-50497 (CSS) |
| ) | |
| ENTACT LLC, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM ORDER

This is a preference action. Before the Court is defendant's motion for summary summary judgment in which it argues that the purported preferential transfers were made in the ordinary course of business. However, the entirety of the alleged course of business between the parties consisted of one transfer made a year before the preferential transfers pursuant to a different contract and under entirely different circumstances. That is simply insufficient to create an ordinary course of business between the parties. Thus, the Court will deny defendant's motion for summary judgment.

## JURISDICTION & VENUE

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2). Venue is proper before the United States Bankruptcy Court for the District of Delaware under 28 U.S.C. §§ 1408 and 1409. The Court has the judicial authority to enter a final order.

## NATURE AND STAGE OF THE PROCEEDINGS

On June 17, 2016 (the "Petition Date"), Maxus Energy Corp., et al., filed voluntary petitions for relief. On June 15, 2018, Plaintiff filed his complaint (the "Complaint") against defendant Entact, LLC ("Defendant" or "Entact") alleging that two pre-petition transfers (the "Subject Transfers") made by one of the Debtors, Tierra Solutions, Inc. ("Tierra" or "Debtor") to Entact are subject to avoidance pursuant to 11 U.S.C. § 547 as "preferential payments."

Defendant filed a timely answer. The matter went to mediation, but a settlement was not reached. The Parties engaged in discovery, which closed on August 15, 2019 pursuant to the Court's Scheduling Order [D.I. 17]. On September 21, 2019, Defendant filed its Motion for Summary Judgment [D.I. 33], Statement of Undisputed Facts [D.I. 34] and two supporting declarations [D.I. 35 and 36]. On November 1, 2019, Plaintiff filed its Response to Defendant's Motion for Summary Judgment and Memorandum of Law in Support Thereof [ D.I. 43] and two supporting declarations [D.I. 44 and 45]. On November 18, 2019, Defendant filed its Reply in Further Support of Entact's Motion for Summary Judgment [D.I. 47] and a supporting declaration [D.I. 48]. The matter is ripe for decision.

## STATEMENT OF FACTS

The facts in this matter are not complicated. Both Debtor and Entact (collectively the "Parties") are in the business of providing environmental remediation services. The two Subject Transfers were made pursuant to a contract known as the "Site 47 Agreement," which was entered into by the Parties in February of 2016 - less than four months before the Petition Date. The Site 47 Agreement was a "Project Specific Construction Services Agreement" having to do with two remediation services at a contaminated site in Kearney, New Jersey. The Site 47 Agreement was predated by a more general "Construction Services Agreement" the ("CSA") entered into by the Parties in June, 2014 - two years prior to the Petition Date. The CSA did not require performance by either party. Rather, it served as a place holder if Entact was a successful bidder on any of Tierra's future projects.[1] Pursuant to the Site 47 Agreement, Tierra was to submit "invoices monthly" and "approved invoices are payable in full by Tierra within thirty (30) days after the receipt of the invoices, subject to the retainage set forth below. Invoices paid within fifteen (15) days of receipt will be subject to a .25 discount." The discount (the "Early Payment Discount") was not a part of or included in the CSA.[2] Entact began work on the Site 47 Agreement on March 21, 2016. It did not send monthly invoices pursuant to the terms of the Site 47 Agreement. Rather, it sent two separate Payment Applications (the "Payment Applications"). The first payment in the amount of $273,533 was made 29

---

[1] See Declaration of Aine Kircnher [D.I. 45] ("Kirchner Dec").

[2] Id. ¶ 7.

days after Entact submitted the first Payment Application. The second payment in the amount of $205,205 was made 9 days after submission of the Payment Application. As such, Payment Two of the Subject Transfers was entitled to the Early Payment Discount, which Tierra applied.[3]

There was only one prior transaction between the Parties prior to the preference period. It was made pursuant to a different and voluminous contract known as the "Site 61 Agreement" (the "Historical Transfer").[4] The Parties entered into the Site 61 Agreement on March 10, 2015, approximately one year prior to the preference period. The terms of the Site 61 Agreement were that Entact was to submit "Requests for Payment" on a monthly basis, or "as deemed acceptable" by Tierra.[5] Entact began performance under the Site 61 Agreement on April 8, 2015. On May 21, 2015, Entact sent its initial Payment Application, which was rejected by the Debtor because there was a dispute as to additional charges in excess of the terms set forth in the contract. This resulted in Entact's issuance of a "change order" and re-submission of the Payment Application 13 days later. On June 3, 2015, Entact resubmitted its revised and approved Payment Application to Debtor for all work done in connection with the Site 61 Agreement, seeking the total price of $515,836. Debtor paid that invoice 15 days later.[6]

---

[3] Id. ¶ 8.

[4] Id. ¶ 9.

[5] Id.

[6] Id. ¶ 11.

## ANALYSIS

### I. Summary Judgment Standard

Summary judgment is a mechanism used to ascertain the existence of a genuine factual dispute between the parties that would necessitate a trial. FED. R. Civ. P. 56, made applicable by FED. R. BANKR. P. 7056 is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[7]

When seeking summary judgment, the movant bears the initial burden of "establishing the absence of a genuine issue of material fact."[8] A genuine issue is not simply based on opposing opinions or unsupported assertions but rather on conflicting factual evidence over which "reasonable minds could disagree on the result."[9] Furthermore, a fact is material if it could "alter the outcome of a case."[10] In other words, the movant's goal is "to establish an absence of evidence to support the nonmoving party's case."[11]

If the movant meets this initial burden, the burden shifts to the nonmoving party to defeat summary judgment by producing "evidence in the record creating a genuine

---

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[8] *J. Aron & Co. v. SemCrude, L.P.* (*In re SemCrude, L.P.*), 504 B.R. 39, 51 (Bankr. D. Del. 2013) (*citing Celotex*, 477 U.S. at 322).

[9] *Liquidation Tr. v. Huffman* (In *re U.S. Wireless Corp.*), 386 B.R. 556, 560 (Bankr. D. Del. 2008) (citations omitted).

[10] *Id.*

[11] *Id.* (*quoting Celotex*, 477 U.S. at 325).

issue of material fact."[12] To demonstrate a genuine issue of material fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[13] The nonmoving party must demonstrate "sufficient evidence (not mere allegations) upon which a reasonable trier of fact could return a verdict in favor of a nonmoving party."[14] This evidence "cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve at an ensuing trial."[15]

When considering a motion for summary judgment, "the court does not weigh the evidence and determine the truth of the matter; rather, the court determines whether there is a genuine issue for trial."[16] The Court must "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor."[17] "If the opposition evidence is merely colorable or not significantly probative, summary judgment may be granted."[18] However, where the record could lead reasonable minds to draw "conflicting inferences, summary judgment is improper, and the action must

---

[12] *In re W.R. Grace & Co.*, 403 B.R. 317, 319 (Bankr. D. Del. 2009).

[13] *Matushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

[14] *Giuliano v. World Fuel Servs., Inc.* (*In re Evergreen Int'l. Aviation*), 2018 WL 4042662, at *2 (Bankr. D. Del. Aug. 22, 2018) (citations omitted).

[15] *Liquidation Tr.*, 386 B.R. at 560 (*quoting Mack v. Great Atl. & Pac. Tea Co.*, 871 F.2d 179, 181 (1st Cir. 1989)).

[16] *Argus Mgmt. Grp. v. GAB Robins, Inc. (In re CVEO Corp.)*, 327 B.R. 210, 214 (Bankr. D. Del .2005) (*quoting Anderson v. Liberty Lobby, Inc*. 477 U.S. 242, 249 (1986) (citations omitted)).

[17] *Saldana v. Kmart*, 260 F.3d 228, 231-32 (3d Cir.2001).

[18] *Whitlock v. Pepsi Am*s., No. C 08-24742 SI, 2009 WL 3415783, at *7 (N.D. Cal Oct. 21, 2009) (citations omitted).

proceed to trial."[19] Summary judgment is proper only where one reasonable inference or interpretation of the facts can be drawn in favor of the moving party.[20]

In this case there is no genuine issue of material fact. While the Parties disagree as to the inference to be drawn from these facts, only Plaintiff's inference is reasonable.[21]

**II.    Defendant is Not Entitled to Summary Judgment**

Section 547(c)(2) permits a "safe harbor" for preferential transfer payments if "such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was (A) made in the ordinary course of business of the debtor and transferee, or (B) made according to ordinary business terms."[22] Plaintiff does not dispute that the Subject Transfers were both "debt incurred in the ordinary course of business of both the Debtor and the Defendant," thereby satisfying the first element of the ordinary course of business defense. Plaintiff agrees that both Defendant and Debtor were in the business of providing remediation management services and that the Subject Transfers were made within that industry. However, Plaintiff disagrees with Defendant's contention that the Subject Transfers were made in the "ordinary course of business of the Debtor and Entact" or were made according to "ordinary business terms."

---

[19] *O'Connor v. Boeing N. Am., Inc.*, 311 F.3d 1139, 1150 (9th Cir. 2002) (*quoting Munger v. City of Glasgow Police Dep't*, 227 F.3d 1082, 1087 (9th Cir.2000).

[20] *Id.*

[21] *Harbour v. ABX Enterprises, Inc. (In re APS Holding Corp.)*, 282 B.R. 785, 800 (D. Del 2002) ("Issues of fact cannot appropriately be resolved on a motion for summary judgment unless no genuine issue of material fact remains and only one reasonable inference can be drawn from the record with respect thereto.").

[22] *Burtch v. Detroit Forming, Inc. (In re Archway Cookies)*, 435 B.R. 234 at 240 (Bankr. D. Del. 2010).

The determination of whether a creditor has met its burden under section 547(c)(2)(A) is a subjective test, "calling for the Court to consider whether the transfer was ordinary as between the debtor and the creditor."[23] Courts have considered several factors in determining whether an ordinary course of business exception exists, including: "(1) the length of time the parties engaged in the type of dealing at issue; (2) whether the subject transfers were in an amount more than usually paid; (3) whether the payments at issue were tendered in a manner different from previous payments; (4) whether there appears to have been an unusual action by the debtor or creditor to collect on or pay the debt; and (5) whether the creditor did anything to gain an advantage (such as additional security) in light of the debtor's deteriorating financial condition."[24] "No one factor is determinative."[25] The party contending that the transfer falls under one of the exemptions bears the burden of proving that assertion by a preponderance of the evidence.[26] Defendant is unable to meet its burden to establish that the Subject Transfers were made in the ordinary course of business as between the Debtor and Entact as a matter of law under the factors set forth in *Conex*. Indeed, the only conclusion on the

---

[23] *In re First Jersey Sec., Inc.*, 180 F.3d 504, 512 (3d Cir. 1999) ("[T]he determination of what is 'in the ordinary course of business' is subjective, calling for the Court to consider whether the transfer was ordinary as between the debtor and the creditor.").

[24] *Stanziale v. Southern Steel & Supply, L.L.C. (In re Conex Holdings, LLC)*, 518 B.R. 269, 280 (Bankr. D. Del. 2014).

[25] *Id.*

[26] 11 U.S.C. § 547(g). *See also First Jersey Sec., Inc.*, 180 F.3d at 512 ("The burden is on the transferee to satisfy each statutory element by a preponderance of the evidence.").

undisputed facts is just the opposite because there was no ordinary course of business as between the Debtor and Entact.

Entact asserts that the parties had a two-year relationship. While it is true that the Debtor and Entact entered into the Site 61 Agreement in 2015, that transaction did not create a course of business that applied to the Site 47 Agreement, which was entered in 2016 and is the basis for the Subject Transfers. Entact began performance under the Site 61 Agreement on April 8, 2015. Unlike the Subject Transfers, the transfer made under the Site 61 Agreement did not allow for the Early Payment Discount. Likewise, it was paid only after resolution of a dispute between the Parties as to the initial Payment Application, which caused a delay in payment to Entact. This course of dealing is irrelevant and substantially different from the course of business under the Site 47 Agreement. One transfer made a year before the preferential transfers pursuant to a different contract and under entirely different circumstances is simply insufficient to create an ordinary course of business between the parties.[27] Moreover, even if the Court were to determine that transfer under the Site 61 Agreement could be the basis for determining ordinary course behavior as between the Parties, the Subject Transfers are not "substantively identical" to, nor even consistent with that transfer.

---

[27] *See, e.g., FBI Wind Down Inc. Liquidating Tr. v. All Am. Poly Corp. (In re FBI Wind Down, Inc.)*, 581 B.R. 116 (Bankr. D. Del. 2018) (Twenty payments to defendant made over eight months prior to the preference period were insufficient to establish a course of dealing between the parties).

## CONCLUSION

Defendants has failed to meet its burden on summary judgment to establish that it is entitled to judgment as a matter of law on the ordinary course of business defense. The undisputed facts establish just the opposite – there was no ordinary course of business between the Debtor and the defendant at the time of the Subject Transfers. [28] Thus, the Motion for Summary Judgment is DENIED.

_____
Christopher S. Sontchi
Chief United States Bankruptcy Judge

Dated: March 23, 2020

---

[28] Defendant argues that the Subject Transfers were "made according to ordinary business terms."  11 U.S.C. § 547(c)(2)(B). The Parties have submitted dueling declarations on the matter.  As such, there is a genuine issue of material fact and entry of summary judgment on this issue is inappropriate.